PACIFIC FAR EAST LINE, INC.,
Appellant,

v.

FEDERAL MARITIME BOARD et al.,
Appellees.

UNITED STATES of America,
Appellant,

v.

FEDERAL MARITIME BOARD et al.,
Appellees.

Nos. 15085, 15086.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 20, 1959.

Decided Feb. 4, 1960.

Mr. Donald E. Van Koughnet, Washington, D. C., for appellant in No. 15085.

Mr. Richard A. Solomon, Atty., Dept. of Justice, with whom Mr. Henry Geller, Atty., Dept. of Justice, was on the brief, for appellant in No. 15086.

Mr. Edward Aptaker, Chief, Regulation Branch, Division of Litigation, Federal Maritime Board, with whom Messrs. E. Robert Seaver, Gen. Counsel, Federal Maritime Board, Robert E. Mitchell, Asst. Gen. Counsel, Federal Maritime Board, and Edward Schmeltzer, Atty., Federal Maritime Board, were on the brief, for appellees Federal Maritime Board, Maritime Administration, Clarence G. Morse, Maritime Administrator, and Frederick H. Mueller, Secretary of Commerce.

Mr. Alvin J. Rockwell, San Francisco, Cal., with whom Mr. Willis R. Deming, San Francisco, Cal., was on the brief, for appellee Matson Navigation Company.

Before EDGERTON, WILBUR K. MILLER, and BASTIAN, Circuit Judges.

EDGERTON, Circuit Judge.

Pacific Far East Line, Inc. (PFEL) asked the District Court to set aside an order of the Federal Maritime Board and the Maritime Administrator (collectively called "the Board") denying PFEL's application for permission to operate unsubsidized vessels between the Pacific Coast and Hawaii.[1] The United States intervened in the District Court as a plaintiff in opposition to the Board's order. Matson Navigation Company (Matson), which had intervened before the Board in opposition to PFEL's application, intervened as a defendant in the District Court in support of the Board's order. These are appeals by the plaintiffs from an order of the District Court granting the defendants' motions for summary judgment.

Appellant PFEL operates a subsidized service between California and the Far East, and an unsubsidized service between California and Guam. Intervenor Matson has operated in the Pacific Coast-Hawaii trade for more than 70 years and is said to carry 98% of the cargo in that trade. Matson is not subsidized directly, but operates a subsidized service to Australia through Oceanic Steamship Co., a wholly-owned subsidiary.

Section 805(a) of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1223(a), forbids the payment of a subsidy to any person who, without written permission from the Board, owns or operates vessels "in the domestic intercoastal or coastwise service", which of course includes the California-Hawaii trade that PFEL seeks to enter. Persons interested in an application for such permission are authorized to intervene before the Board, and the Board is required to "give a hearing to the applicant and the intervenors." The Board is not to grant permission if the Board "finds it will result in unfair competition to any person, firm, or corporation operating exclusively in the coastwise or intercoastal service or that it would be prejudicial to the objects and policy of this chapter." It is made a misdemeanor for one who has received such permission "to divert, directly or indirectly, any moneys * * * used in foreign-trade operations, for which a subsidy is paid by the United States, into any such coastwise or intercoastal operations * * *."

After a long hearing, the Board's examiner recommended granting PFEL's application. The Board denied it by a divided vote. The Board found that if the application were granted, PFEL "would be in a position to concentrate primarily on high value commodities, and would, in effect 'skim the cream' in this trade" between the Pacific Coast and Hawaii; that although PFEL's competition might divert less than 10% of Matson's tonnage, "the diversion of Matson revenues may be substantially greater"; that the diversion "would seriously jeopardize Matson's vessel replacement program, and would impede the proper

---

1. We dismissed for want of jurisdiction a petition for direct review of the Board's order in this court, expressing no opinion as to the District Court's jurisdiction of the present suit. Pacific Far East Line v. United States, 103 U.S.App.D.C. 104, 255 F.2d 182, certiorari denied 358 U.S. 866, 79 S.Ct. 97, 3 L.Ed.2d 98.

development and continuation of Matson's California/Hawaii service"; and that the "record fails to show the need for service in excess of that presently provided by Matson and other existing operators". The Board concluded that "to permit PFEL to carry cargoes in the California/Hawaii trade would result in unfair competition to Matson in its California/Hawaii service, an exclusively domestic service, and would be prejudicial to the objects and policy of the Act." The Board thinks "a subsidized operator should not be permitted to deprive regular domestic carriers of cargoes which they need, have the capacity to carry," and to which the Board considers them "fundamentally entitled".

Section 10 of the Administrative Procedure Act subjects "every agency action" to judicial review, except so far as "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion  *  *  *." 5 U.S.C.A. § 1009. The Merchant Marine Act does not preclude judicial review and does not commit the Board's action to the Board's discretion. Administrative action that requires a hearing and turns on the meaning and application of statutory language is usually subject to judicial review. As in Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 183, 59 S.Ct. 160, 164, 83 L.Ed. 111, "The nature of the determination points to the propriety of judicial review." Nothing in the legislative history indicates a contrary intention. Accordingly the District Court had jurisdiction of this suit.

The Board did not find, and the evidence does not show, that PFEL would have any competitive advantage over Matson in the California-Hawaii trade because it has a subsidy in the Far East trade. As the examiner said, "Matson's witness admitted that the fact that PFEL has a subsidy would not permit PFEL to obtain more cargo in competition with Matson than it would without a subsidy." The Board did not find and the record does not show that PFEL would compete fraudulently; or that it would engage in cutthroat competition, either by fixing rates below cost and using the profits of its subsidized Far East trade to carry the loss, or by paying sub-standard wages, or by using sub-standard ships, or otherwise; or that it would compete in any way that is unfair according to accepted legal or ethical standards. The Department of Justice, on behalf of the United States, urges that competition is not "unfair" within the meaning of the Act when it does not involve diversion of money to unsubsidized domestic operations from subsidized foreign operations, to the disadvantage of an unsubsidized operator. Congress plainly did intend to prevent that sort of competition. We need not consider whether it intended to prevent some other sorts as well. We think Congress clearly did not intend to prevent anything that the Board or the evidence attributes to PFEL.

The Board practically equated unfair competition with effective competition. But what is bad for Matson is not necessarily bad for the country. However adequate Matson's service may be, and in whatever sense Matson may "need" to retain its monopoly of the California-Hawaii trade, we cannot accept the Board's view that Matson is "fundamentally entitled" to retain this monopoly as against a competitor that is subsidized —as Matson itself is, through its subsidiary Oceanic—in a different trade. Service and need would be important if the Board were a public utility commission passing upon an application to enter a regulated field, but have nothing to do with the question whether PFEL's competition with Matson would be "unfair".

The Board has disclosed no basis for its finding that PFEL's entry into the trade would be "prejudicial to the objects and policy of the Act." Preservation of Matson's monopoly is not an object or policy of the Act. On the contrary, the public interest in ending this monopoly should be considered. The Act does not exempt the California-Hawaii

trade from the anti-monopoly policy which Congress has often expressed.

The appellants do not ask that we reverse the Board's finding with regard to "objects and policy", but only that the case be remanded to the Board so that it may reconsider this finding and clarify it if it is retained. We are adopting this suggestion. The Board should, at least, "make the basis of its action reasonably clear. We cannot find that it did so here." Radio Station KFH Co. v. Federal Communications Commission, 101 U.S.App.D.C. 164, 166, 247 F.2d 570, 572. " 'Something more precise is requisite in the quasi-jurisdictional findings of an administrative agency. * * * We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' " Secretary of Agriculture v. United States, 347 U.S. 645, 654, 74 S.Ct. 826, 832, 98 L.Ed. 1015.

The judgment is vacated, and the case is ordered to be remanded for further proceedings by the Board limited to the question whether PFEL's entry into the trade would be "prejudicial to the objects and policy of the Act."

Vacated and remanded.